1

2

3

4

5

## UNITED STATES DISTRICT COURT

6

## EASTERN DISTRICT OF WASHINGTON

7 | TERRY LESLIE,

No. 1:15-CV-03214-MKD

8 |        Plaintiff,

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY

9 |    vs.

JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

10 | CAROLYN W. COLVIN,

11 | Acting Commissioner of Social Security,

ECF Nos. 14, 15

12 |        Defendant.

13        BEFORE THE COURT are the parties' cross-motions for summary

14 judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate

15 judge. ECF No. 7. The Court, having reviewed the administrative record and the

16 parties' briefing, is fully informed. For the reasons discussed below, the Court

17 denies Plaintiff's motion (ECF No. 14) and grants Defendant's motion (ECF No.

18 15).

19

20

1

**JURISDICTION**

2        The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

3    1383(c)(3).

4

**STANDARD OF REVIEW**

5        A district court's review of a final decision of the Commissioner of Social

6    Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

7    limited; the Commissioner's decision will be disturbed "only if it is not supported

8    by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

9    1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

10   reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

11   (quotation and citation omitted).  Stated differently, substantial evidence equates to

12   "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

13   citation omitted).  In determining whether the standard has been satisfied, a

14   reviewing court must consider the entire record as a whole rather than searching

15   for supporting evidence in isolation.  *Id.*

16       In reviewing a denial of benefits, a district court may not substitute its

17   judgment for that of the Commissioner.  If the evidence in the record "is

18   susceptible to more than one rational interpretation, [the court] must uphold the

19   ALJ's findings if they are supported by inferences reasonably drawn from the

20   record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

1  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

2  defined generally as the claimant's ability to perform physical and mental work

3  activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

4  404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the

5  analysis.

6      At step four, the Commissioner considers whether, in view of the claimant's

7  RFC, the claimant is capable of performing work that he or she has performed in

8  the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

9  If the claimant is capable of performing past relevant work, the Commissioner

10  must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).

11  If the claimant is incapable of performing such work, the analysis proceeds to step

12  five.

13      At step five, the Commissioner considers whether, in view of the claimant's

14  RFC, the claimant is capable of performing other work in the national economy.

15  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination,

16  the Commissioner must also consider vocational factors such as the claimant's age,

17  education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v);

18  416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

19  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

20  404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other

1  work, analysis concludes with a finding that the claimant is disabled and is

2  therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

3      The claimant bears the burden of proof at steps one through four above.

4  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

5  step five, the burden shifts to the Commissioner to establish that (1) the claimant is

6  capable of performing other work; and (2) such work "exists in significant

7  numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2);

8  *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

9                                    **ALJ's FINDINGS**

10     Plaintiff applied for disability insurance benefits and supplemental security

11  income benefits on July 11, 2012, alleging disability since July 31, 2001.  Tr. 216-

12  26.  Plaintiff's application was denied initially, Tr. 143-51, and on reconsideration,

13  Tr. 153-64.  Plaintiff appeared at a hearing before an Administrative Law Judge

14  (ALJ) on August 26, 2013.  Tr. 38-80.  On February 27, 2014, the ALJ denied

15  Plaintiff's claim.  Tr. 20-31.

16     At the outset, the ALJ found that Plaintiff met the insured status

17  requirements of the Act with respect to his disability benefit claim through

18  December 31, 2016.  Tr. 22.  At step one, the ALJ found that Plaintiff had not

19  engaged in substantial gainful activity after the alleged onset date, July 31, 2011.

20  Tr. 22.  At step two, the ALJ found that Plaintiff has the following severe

impairments: abdominal pain disorder; malrotation of the bowels; low back pain disorder; bilateral carpal tunnel syndrome; depressive disorder not otherwise specified; personality disorder; and post-traumatic stress disorder (PTSD).  Tr. 22. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 24.  The ALJ then concluded that Plaintiff has the RFC:

> to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except he is limited to lifting 10 pounds with the upper right extremity; he is limited to no more than occasional public interaction; he can work independently but cannot coordinate task[s] with coworkers; he can perform simple tasks; and he can have normal breaks and on occasion may need more breaks of 2 or more times during the workday.

Tr. 26.  At step four, the ALJ found that Plaintiff could not perform his past relevant work.  Tr. 30.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert, there are jobs in significant numbers in the national economy that Plaintiff could perform, such as deliverer (outside) courier, mail room clerk, and copier machine operator.  Tr. 30-31.  On that basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act.  Tr. 31.

On October 28, 2015, the Appeals Council denied review, Tr. 1-6, making the Commissioner's decision final for purposes of judicial review.  *See* 42 U.S.C. § 1383(c) (3); 20 C.F.R. §§ 416.1481, 422.210.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 14.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly discredited Plaintiff's symptom claims;

2.  Whether the ALJ properly weighed the medical opinion evidence; and

3.  Whether the additional evidence submitted to the Appeals Council warrants remand.

ECF No. 14 at 8.

**DISCUSSION**

**A.  Adverse Credibility Finding**

First, Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting his symptom claims.  ECF No. 14 at 8-15.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

1   "The claimant is not required to show that her impairment could reasonably be

2   expected to cause the severity of the symptom she has alleged; she need only show

3   that it could reasonably have caused some degree of the symptom." *Vasquez v.*

4   *Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

5          Second, "[i]f the claimant meets the first test and there is no evidence of

6   malingering, the ALJ can only reject the claimant's testimony about the severity of

7   the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

8   rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting

9   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  "General findings are

10  insufficient; rather, the ALJ must identify what testimony is not credible and what

11  evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81

12  F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.

13  2002) ("[T]he ALJ must make a credibility determination with findings sufficiently

14  specific to permit the court to conclude that the ALJ did not arbitrarily discredit

15  claimant's testimony.").  "The clear and convincing [evidence] standard is the most

16  demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995,

17  1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920,

18  924 (9th Cir. 2002)).

19         In making an adverse credibility determination, the ALJ may consider, *inter*

20  *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

claimant's testimony or between her testimony and her conduct; (3) the claimant's

daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the

claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons

for finding that Plaintiff's statements concerning the intensity, persistence, and

limiting effects of his symptoms are "not entirely credible[.]"  Tr. 27.

*1. Lack of Objective Evidence*

First, the ALJ found that the objective medical evidence did not support the

degree of physical limitation alleged by Plaintiff.  Tr. 27.  Subjective testimony

cannot be rejected solely because it is not corroborated by objective medical

findings, but medical evidence is a relevant factor in determining the severity of a

claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001);

*see also Burch v. Barnhart*, 400 F.2d 676, 681 (9th Cir. 2005).

The ALJ set out, in detail, the medical evidence regarding Plaintiff's

impairments, and ultimately concluded that his allegations were inconsistent with

the medical evidence.  Tr. 27-30.  The ALJ found, for example, that Plaintiff's

complaints of back pain were not supported by objective medical evidence.  Tr. 23.

The ALJ found that, in September 2012, Plaintiff reported a five year history of

back pain, but the medical record shows, as the ALJ noted, that examination

findings have largely been normal.  Tr. 23 (citing Tr. 556) (Plaintiff reported chronic back pain for at least the last five years).  The ALJ found, for example, that on physical exam in March 2013, despite a positive straight leg raise test at ten degrees, Plaintiff had no low back tenderness, good range of motion of the back and hips, and normal gait.  Tr. 23 (citing Tr. 494).  The ALJ found, as another example, that on physical examination in July 2013, Plaintiff was noted to be in no acute distress.  Tr. 27 (citing Tr. 498).  The ALJ further found that physical examination findings show no difficulty with ambulation.  Tr. 24 (citing Tr.  494) (March 2013).  Moreover, the ALJ observed that there are no objective images of Plaintiff's back.  Tr. 24.

The ALJ further found that Plaintiff's complaints of chronic abdominal pain, with associated constant nausea and frequent vomiting, were also not supported by the medical evidence.  Tr. 22-23, 27-30.  For example, the ALJ found that although Plaintiff reported in 2012 that he had a ten-year history of abdominal pain and constant nausea, the ALJ found that treatment records revealed largely normal objective findings.  Tr. 23 (citing Tr. 556) (Plaintiff reported a ten year history of abdominal pain, with nausea 24 hours a day and vomiting 3 days a week).  The ALJ found that, while a CT scan in March 2012 showed malrotation of the intestines, Tr. 368, images of the small bowel in June 2012 showed no evidence of obstruction and no abnormality.  Tr. 22-23, 27 (citing Tr. 423); Tr. 27 (citing Tr.

422) (in August 2012, testing for gastric emptying showed that functionally, gastric emptying was normal).

The ALJ further found that Plaintiff's complaints of constant daily nausea and severe abdominal pain were not supported by physical examination findings. Tr. 27.  For example, the ALJ found that an examination by Dr. Hardaway in July 2012 yielded normal examination findings, other than some tenderness to palpitation of the left lower quadrant.  Tr. 27 (citing Tr. 415).  Plaintiff complained of constant nausea and frequent vomiting, but, as the ALJ pointed out, Dr. Hardaway observed Plaintiff had not lost a significant amount of weight, Tr. 23 (citing Tr. 414) (emphasis added), contrary to what one would expect in someone with such extreme nausea and vomiting.  The ALJ further found that, in August 2012, examining physician Suzanne Rapp, M.D., noted audible bowel tones and tenderness to palpitation throughout Plaintiff's abdomen, but no rebound.  Tr. 27 (citing Tr. 396).  Dr. Rapp's examination further revealed very tight abdominal musculature, but she noted that there was no hernia and she was unable to elicit localized pain.  Tr. 27 (citing Tr. 396).

The ALJ further found that Plaintiff's complaints of severe hand pain and decreased functioning were also not supported by the medical evidence.  Tr. 27. For example, the ALJ found that treatment records in January 2013 showed that Plaintiff told treatment provider Dena Mahre, PAC that his right hand condition

(CTS) was improving; he was performing home exercises, and he rated his pain as zero out of ten. Tr. 27 (citing Tr. 465). In April 2013, following right carpal tunnel release, treating physician John Adkison, M.D., opined that Plaintiff's range of motion was acceptable at that point post-operatively and he advised Plaintiff to resume normal activity as tolerated. Tr. 28 (citing Tr. 461). At the same appointment, Plaintiff reported that his symptoms were improving and he rated his right hand pain as five out of ten. Tr. 28 (citing Tr. 461-62). The ALJ also found that a couple of months later, in June 2013, Plaintiff told Ms. Mahre that he experienced only intermittent left hand pain, he was performing home exercises, and he rated the intermittent pain as three out of ten. Tr. 28 (citing Tr. 455). Also in June 2013, the ALJ found that treatment provider Ms. Mahre opined that Plaintiff's left wrist, post-operatively, had full range of motion, intact motor and sensory exam findings (with no deficits), normal pulses, and no swelling. Tr. 28 (citing Tr. 455). In July 2013, the ALJ found that an examination by treating physician Dr. Reinmuth revealed "some atrophy of the right thenar muscles:"[1] Dr.

---

[1] Carpal tunnel syndrome (CTS) is characterized by classic symptoms of paresthesias (burning or prickling sensations) in the median distribution that is sometimes accompanied by thenar atrophy. The thenar region of the palm is the group of muscles in the thick pad just underneath the thumb. Thenar atrophy is an

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

Reinmuth observed that Plaintiff was in no acute distress.  Tr. 27 (citing Tr. 498).

Because an ALJ may discount pain and symptom testimony based on lack of

medical evidence, as long as it is not the sole basis for discounting a claimant's

testimony, the ALJ did not err when she found Plaintiff's complaints exceeded and

were not supported by objective and physical exam findings.

      *2. Lack of Compliance with Medical Treatment*

      Second, the ALJ found Plaintiff's complaints less than credible because

Plaintiff continued to use marijuana despite medical recommendations that he stop.

Tr. 28.  Failing to comply with medical treatment casts doubt on a claimant's

allegations of disabling impairment, since one with severe impairments would

presumably follow prescribed medical treatment to obtain relief.  Accordingly,

failing to follow a prescribed course of medical treatment is a permissible reason

for discounting Plaintiff's credibility.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th

Cir. 1996) (An ALJ may consider a claimant's unexplained or inadequately

erosion of muscle tissue.  Results suggest that patients with thenar atrophy show

increased grip strength and pinch strength by the sixth month after surgical

treatment.  www.ncbi.nlm.nih.gov; 2013 Mar; 8(1): 60-63.

explained failure to follow a prescribed course of treatment when assessing a

claimant's credibility) (citations omitted)).

The ALJ found, for example, that in September 2012, treating physician Dr.

Reinmuth noted that gastrointestinal physicians in Seattle had indicated some of

Plaintiff's symptoms might relate to his chronic marijuana use,[2] Tr. 28 (citing Tr.

484), and, as a result, Dr. Reinmuth encouraged Plaintiff to completely stop using

marijuana.  *Id.*  Later the same month, the ALJ found that Plaintiff told examining

physician Dr. Schuffler that he only used marijuana twice per month and he

---

[2] On September 10, 2012, examining physician Michael D. Schuffler, M.D., opined

that the fact that Plaintiff "takes 5-10 showers per day points to cannabinoid hyper

emesis syndrome."  Tr. 23 (citing Tr. 557).  "Cannabinoid hyperemesis syndrome

is characterized by chronic, heavy use of cannabis, recurrent episodes of severe

nausea and intractable vomiting, and abdominal pain.  Temporary relief of

symptoms is achieved by taking a hot bath or shower, and resolution of the

problem when cannabis use is stopped . . . Other than stopping cannabis use, there

is no proven treatment."  www.ncbi.nlm.nih.gov.  The ALJ found that cannabinoid

hyperemesis is an established medically determinable impairment.  Tr. 24.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

believed that his urine would likely test positive for marijuana.  Tr. 28 (citing Tr. 557).  Dr. Schuffler told Plaintiff "to stop the marijuana as it is exacerbating his nausea and vomiting."  Tr. 23-24, 28 (referring to Tr. 557).   The ALJ further found that in November 2012, Plaintiff told Dr. Reinmuth that he tried not using marijuana the previous month (in October 2012), but had not noticed any improvement, so Plaintiff said he intended to go back to using marijuana again. Tr. 28 (citing Tr. 488).  Also in November 2012, Plaintiff told examining physician Dr. Moonka that he used "a bowl" of marijuana per week, Tr. 28 (citing Tr. 515). The ALJ additionally found that the record contains multiple positive tests for marijuana.  Tr. 28 (citing Tr. 613, 650, 652, 655).  Moreover, the ALJ found that, despite recommendations from treating physician Dr. Reinmuth and examining physicians Dr. Moonka and Dr. Schuffler to stop using marijuana because it aggravated his symptoms, Plaintiff testified at the hearing that he smokes "[n]o more than a joint a day."  Tr. 26 (citing Tr. 49).  The ALJ reasonably found that Plaintiff's lack of compliance with medical treatment called into question the severity of Plaintiff's symptoms.  Tr. 28.   This was a clear and convincing reason to find Plaintiff less than credible.

### 3. Reason for Stopping Work

The ALJ found that Plaintiff's credibility was diminished because he stopped working for reasons other than disability.  Tr. 28 (citing Tr. 395, 429).

When considering a claimant's contention that he cannot work because of his impairments, it is appropriate to consider whether the claimant has not worked for reasons unrelated to his alleged disability. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (the fact that the claimant left his job because he was laid off, rather than because he was injured, was a clear and convincing reason to find him not credible). Here, the ALJ found that in August 2012, Plaintiff told examining psychologist Dr. Dougherty that he was fired from a job installing garage doors because he stole diesel from his employer. Tr. 28 (citing Tr. 429). The ALJ further found that Plaintiff told Dr. Dougherty that he was fired for fighting from a company where Plaintiff had worked with machinery and assembly equipment. *Id.*; *see also* Tr. 44-45 (Plaintiff testified that he "got in an altercation with somebody" and his boss told Plaintiff that he was laid off). The ALJ additionally found that, at another appointment in August 2102, Plaintiff told examining physician Dr. Rapp that he had worked seasonally for four years processing cherries and when the season ended Plaintiff had collected unemployment benefits. Tr. 28 (citing Tr. 395). Plaintiff also told Dr. Rapp that he stopped this seasonal work in 2012 when he became unable to work. Tr. 28 (citing *id.*). Significantly, Plaintiff alleged onset beginning July 31, 2011, an inconsistency that further diminished Plaintiff's credibility (see *infra*). Because Plaintiff stopped working for reasons unrelated to his alleged disability, the ALJ provided another permissible

1  reason to cast doubt on Plaintiff's purported reason for unemployment.  *See*

2  *Thomas*, 278 F.3d at 959.

3      *4. Daily Activities*

4      The ALJ found that Plaintiff's subjective complaints are inconsistent with

5  his daily activities.  Tr. 28.  If a claimant is able to spend a substantial part of his

6  day engaged in pursuits involving the performance of physical functions that are

7  transferrable to a work setting, a specific finding as to this fact may be sufficient to

8  discredit a claimant's allegations.  *Morgan v. Comm'r of Soc. Sec. Admin*., 169

9  F.3d 595, 600 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.

10  1989)).  Alternatively, when activities "contradict claims of a totally debilitating

11  impairment," an ALJ may discredit a claimant's testimony.  *Molina*, 674 F.3d at

12  1112-12 (internal quotation marks and citations omitted).  Here, the ALJ found that

13  Plaintiff testified that, on bad days, he sometimes vomited for 48 hours and was

14  confined to bed all day, and he estimated that about two weeks would pass between

15  these episodes.  Tr. 26 (citing Tr. 47).  However, the ALJ found that this degree of

16  limitation was contradicted, for example, by Plaintiff's report that he had no

17  problems with personal care, including dressing and bathing.  Tr. 28 (citing Tr.

18  289) (July 2012).  As another example, the ALJ found that Plaintiff's symptoms

19  were inconsistent with his report that he went out of the house 3 to 4 times a day,

20  was able to drive, and shopped in stores.  Tr. 28 (citing Tr. 291).  The ALJ further

1   found that in August 2012, Plaintiff told examining psychologist Dr. Dougherty

2   that he cooked, washed dishes, swept, mopped, and vacuumed; Plaintiff reported

3   that was able to perform light chores for about an hour and he worked at an

4   average rate of speed.  Tr. 28 (citing Tr. 431-32).  The ALJ found, as further

5   examples, that Plaintiff testified he performed some household chores: he swept

6   floors, folded laundry, put dishes in the dishwasher, vacuumed, and took out the

7   garbage.  Tr. 28 (citing Tr. 64-65).  The ability to drive, shop, prepare meals, clean

8   house, take out the garbage and work at an average speed is inconsistent with

9   Plaintiff's allegedly disabling symptoms.  The ALJ also found that Plaintiff had a

10  fourteen-year relationship with his fiance, spent time with his parents twice per

11  week, Tr. 25(citing Tr. 429), and was able to count change, pay bills, handle a

12  savings account, and use a checkbook/money orders.  Tr. 29 (citing Tr. 291).  The

13  ALJ's reason is clear and convincing.  However, even if the evidence of Plaintiff's

14  daily activities in this case may be interpreted more favorably to the Plaintiff, it is

15  susceptible to more than one rational interpretation, and therefore the ALJ's

16  conclusion must be upheld.  *See Burch*, 400 F.3d at 679.

17      *5. Inconsistent Statements*

18      The ALJ found that Plaintiff's inconsistent statements diminished his

19  credibility.  Tr. 28.  "To determine whether the claimant's testimony regarding the

20  severity of [his] symptoms is credible, the ALJ may consider, for example,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284 (citations omitted).  Here, the ALJ found that Plaintiff testified that he attended an alternative school in the ninth grade, attended school up to eleventh grade, and was placed in special education classes for math.  Tr. 28 (citing Tr. 42).  However, in August 2012, Plaintiff told examining psychologist Dr. Dougherty that he had attended regular, rather than special, education classes, and had dropped out of school in the ninth grade.  Tr. 28 (citing Tr. 428).  The ALJ further found an inconsistency in that Plaintiff testified that he does not know how to count change, Tr. 29 (citing Tr. 43); however, in his July 2012 function report, Plaintiff indicated that he could count change, pay bills, handle a savings account, and use a checkbook/money orders.  Tr. 29 (citing Tr. 291) (emphasis added).  Additionally, the ALJ found that in August 2012, Plaintiff told Dr. Dougherty that his mother paid his bills at that time, but Plaintiff admitted that in the past, he performed these tasks independently.  Tr. 29 (citing Tr. 432).  The ALJ provided a clear and convincing reason to find Plaintiff's symptom testimony less than fully credible.

### 6. Conservative Treatment Recommended

The ALJ found Plaintiff less than credible because only conservative treatment was recommended by examining physicians.  Tr. 27 (citing Tr. 396,

416).  "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007).  The ALJ found, for example, that in July 2012, examining physician Dr. Hardaway opined that there was no surgical target that would relieve Plaintiff's symptoms; for treatment, Dr. Hardaway recommended a stool softener and Metamusil.  Tr. 27 (citing Tr. 416).  The ALJ found, as another example, that in August 2012, examining physician Dr. Rapp recommended stretching exercises as treatment.  Tr. 27 (citing Tr. 396).  The ALJ found, as another example, that two examining physicians, Dr. Hardaway and Dr. Crawford, agreed with each other that Plaintiff was not a surgical candidate for his potential malrotated gut; significantly, they opined that surgery was not an option because they were unconvinced that Plaintiff had that condition.  Tr. 23, 27 (citing Tr. 416, 496) (italics added).  The ALJ further found, as yet another example, that in September 2012, examining physician Dr. Schuffler diagnosed chronic abdominal wall pain associated with back pain; he opined that Plaintiff had very weak core muscles, which were adding to the stress on his abdomen and back.  Tr. 23 (citing Tr. 557).  Dr. Schuffler further opined that nausea, vomiting, and constipation were to a large extent related to Plaintiff's use of hydromorphone, and he opined that Plaintiff's admission that he took multiple daily showers (5-10 showers a day) indicated that

1   Plaintiff has cannabinoid hyperemesis syndrome.  *Id.*  Significantly, the ALJ found

2   that Dr. Schuffler, like Dr. Hardaway and Dr. Rapp, also recommended only

3   conservative treatment: Plaintiff was told to stop using marijuana, as it was

4   exacerbating nausea and vomiting; laxatives were recommended, as was reducing

5   hydromorphone, since it was exacerbating Plaintiff's GI symptoms; and physical

6   therapy was recommended to improve Plaintiff's core muscle function.  Tr. 28

7   (citing Tr. 557-58).  Because evidence of conservative treatment is sufficient to

8   discount claimant's testimony regarding the severity of an impairment, the ALJ

9   provided a clear and convincing reason.  *Tommasetti,* 533 F.3d at 1039.

10          *7. Evidence Regarding Mental Health Impairment*

11          The ALJ found that Plaintiff's unexplained failure to seek mental health

12   treatment diminished his credibility.  Tr. 29.  Unexplained or inadequately

13   explained failure to seek treatment or to follow a prescribed course of treatment is

14   properly considered when an ALJ assesses credibility.  *Smolen*, 80 F.3d at 1284.

15          For example, the ALJ found that there is no medical evidence that Plaintiff

16   sought mental health treatment during the relevant period, which calls into

17   question the severity of Plaintiff's alleged mental health symptoms.[3]  Tr. 29; *see*

18   _____

19   [3] Plaintiff contends that he did not seek mental health treatment because he lacked

20   insurance.  ECF No. 14 at 6.  In August 2012, examining physician Dr. Rapp noted

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22

1  *also* Tr. 43-44 (Plaintiff testified that he was previously approved for disability

2  benefits for mental impairments; however, after two years of counseling and

3  medication, Plaintiff improved enough to return to work until 2011); *see also* Tr.

4  427 (Plaintiff told Dr. Dougherty that he had been in counseling until about seven

5  years ago for three years, and it was helpful).  Because an unexplained or

6  inadequately explained failure to seek treatment diminishes a claimant's

7  credibility, the ALJ provided another specific, clear and convincing reason for

8  finding Plaintiff less than fully credible.

9        The ALJ further found that normal mental status exam findings diminished

10  Plaintiff's credibility.  Tr. 29.  Subjective testimony cannot be rejected solely

11  because it is not corroborated by objective medical findings, but medical evidence

12  is a relevant factor in determining the severity of a claimant's impairments.

13  _____

14  that Plaintiff appeared anxious and depressed.  Tr.  396.  When Plaintiff told Dr.

15  Rapp that he had no insurance, she indicated that she did not know what local

16  resources might be available to help with Plaintiff's anxiety and depressive

17  symptoms.  *Id.*  Plaintiff has not asserted that such resources were unavailable to

18  him, nor does the record show that Plaintiff sought any further information.  At the

19  hearing, Plaintiff testified that he had insurance.  Tr. 66.  The ALJ is correct that

20  Plaintiff's explanation for failing to seek mental health treatment is inadequate.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 23

1  *Rollins*, 261 F. 3d at 857.  For instance, the ALJ found that mental status exam

2  findings are generally mild.  Tr. 29 (citing Tr. 693-94 (in April 2012, Plaintiff was

3  noted to be fully oriented, speech and affect were normal, and Plaintiff was

4  cooperative and alert); Tr. 676 (the following month, in May 2012, on MSE

5  Plaintiff again was completely oriented, with normal speech and memory[4])).

6  Because an ALJ may discount symptom testimony based on a lack of medical

7  evidence, as long as it is not the sole basis for discounting a claimant's testimony,

8  the ALJ did not err when she found that Plaintiff's mental health complaints

9  exceeded and were not supported by objective exam findings.

10      In addition, the ALJ found that Plaintiff's credibility was diminished

11  because he made statements to medical providers that were inconsistent with

12  allegedly disabling limitations.  Tr. 27.  An ALJ may properly consider

13  inconsistencies in a claimant's testimony when evaluating a claimant's credibility.

14  *See Burch*, 400 F.3d at 680 (in determining credibility, an ALJ may engage in

15  ordinary techniques of credibility evaluation, such as considering claimant's

16  reputation for truthfulness and inconsistencies in claimant's testimony).  The ALJ

17  found, for example, that Plaintiff told treating physician Dr. Reinmuth in May

18  2013, after conservative treatment was recommended, that Plaintiff was unsure if

19  _____

20  [4] The ALJ further found normal MSEs at Tr. 586, 593, 599, 618, 630, 661, 668.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 24

he wanted to pursue other medical opinions.  Tr. 27 (citing Tr. 496).  Plaintiff told

Dr. Reinmuth he felt resigned, for now, to learn to live with his abdominal issues.

Tr. 27 (citing Tr. 496).  The ALJ opined that this suggested that Plaintiff's

symptoms were not as disabling as alleged, Tr. 27 (citing Tr. 496), since

presumably one suffering from debilitating symptoms would continue to seek

treatment options.  The ALJ found, as another example, that at an August 2012

appointment, Plaintiff told examining physician Dr. Rapp that hyoscyamine was

the most helpful of his medications, as in the previous month he had experienced

fewer abdominal-related episodes and had not visited the emergency room for

treatment.  Tr. 27 (citing Tr. 394).  Plaintiff attributed this improvement to the

addition of hyoscyamine.  Tr. 27 (citing Tr. 394).  The ALJ found, as additional

examples, that in January 2013, Plaintiff denied constipation, nausea, and

vomiting, Tr. 27 (citing Tr. 465, 468); and in April 2013, Plaintiff again denied

nausea and vomiting Tr. 27 (citing Tr. 461).  This was a clear and convincing

reason to find Plaintiff less than credible.

      In sum, despite Plaintiff's arguments to the contrary, the ALJ provided

specific, clear and convincing reasons, supported by the record, for rejecting

Plaintiff's testimony.  *See Ghanim*, 763 F.3d at 1163.

      ///

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 25

**B.  Medical Opinion Evidence**

Plaintiff next faults the ALJ for discounting the opinions of treating physician K. Scott Reinmuth, M.D., and examining psychologist Roland Dougherty, Ph.D., and for instead crediting the opinions of reviewing physicians Denis Koukol, M.D., and Thomas Clifford, Ph.D.  ECF No. 14 at 15-19.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

*1. Dr. Reinmuth*

Dr. Reinmuth began treating Plaintiff in April 2012. Dr. Reinmuth rendered three opinions that Plaintiff contends were not properly credited, and he offered a fourth opinion that Plaintiff does not discuss. Tr. 360-62; 447-50; 470-72; 698-703.

In July 2012, Dr. Reinmuth opined that work would not worsen Plaintiff's condition, but it would worsen his symptoms during an abdominal flare, and Plaintiff would likely miss four or more days of work each month. Tr. 29 (citing Tr. 360-62). In April 2013, Dr. Reinmuth opined that Plaintiff was limited to sedentary work for six months, he was scheduled for upcoming carpal tunnel release surgery, and was currently undergoing physical therapy for his back and right leg. Tr. 29 (citing Tr. 447-50) (Dr. Reinmuth noting upcoming surgery, current physical therapy, and he was also considering obtaining a spinal MRI). In

July 2013, Dr. Reinmuth opined that Plaintiff was limited to sedentary work at the most, but, he further opined that Plaintiff could not work even at this level on a regular basis.  Tr. 29 (citing Tr. 470-72).  As noted, Plaintiff does not refer to Dr. Reinmuth's last opinion, in October 2013, where he opined that Plaintiff was limited to sedentary work although "the unpredictable nature of his belly pains, etc.," may at times cause Plaintiff to miss appointments.  Tr. 699-700.  The ALJ gave all of these opinions little weight.  Tr. 29.  Because Dr. Reinmuth's opinions were contradicted by Dr. Koukol, Tr. 120-22, 133-35, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Reinmuth's opinions.  *See Bayliss*, 427 F.3d at 1216.

First, the ALJ gave Dr. Reinmuth's opinions limited weight because the RFC he assessed, for sedentary work or less, is not supported by objective findings.  Tr. 29.  An ALJ may discredit a treating physician's opinions that are unsupported by the record as a whole or by objective medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Here, the ALJ found, for example, that in April 2013, Dr. Reinmuth assessed low back pain with right leg neuropathy and CTS.  Tr. 29 (citing Tr. 447).  He noted that Plaintiff was undergoing physical therapy for his back and right leg, and surgery for CTS was upcoming; he opined that if Plaintiff was not improving in four weeks he should undergo a spinal MRI.  Tr. 29 (citing Tr. 449).  Apparently Plaintiff improved

because, as the ALJ found, there are no objective images of Plaintiff's spine, MRI or otherwise, in the record.  Tr. 24.  The ALJ further found, as another example, that objective findings have been mostly normal.  Tr. 29; *see, e.g.*, Tr. 422-23 (test results in August 2012 showed normal gastric emptying); Tr. 415 (testing that was reviewed in July 2012 showed no bowel obstruction or signs of inflammation). The ALJ is correct that the objective evidence does not support Dr. Reinmuth's dire limitations, such as his July 2012 opinion that Plaintiff would miss four or more days of work each month, Tr. 361, his April 2013 limitation to sedentary work for six months, Tr. 29 (citing Tr. 449), or his July 2013 opinion that Plaintiff could not regularly sustain even sedentary work and at times is severely limited. Tr. 29 (citing Tr. 470-72).

This was a specific, legitimate reason to give little weight to Dr. Reinmuth's opinions.

Next, the ALJ rejected Dr. Reinmuth's assessed dire limitations because they were not supported by mostly normal physical examination findings. Tr. 29. An ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.  *Thomas*, 278 F.3d at 957 (citation omitted).  For instance, the ALJ found that findings by examining physician Dr. Rapp in August 2102 were essentially normal.  Tr. 27 (citing Tr. 396) (tender to palpitation but no localized

1   pain; stretching exercises sole treatment recommendation).  In June 2013,

2   treatment provider Dena Mahre, PAC, noted on exam that Plaintiff had full range

3   of motion; motor and sensory exam findings were intact, with no deficits; pulses

4   were normal; and there was no swelling.  Tr. 28 (citing Tr. 455).  The ALJ further

5   found, as another example, that in July 2013, Dr. Reinmuth observed that Plaintiff

6   was in no acute distress and, on exam, his condition was grossly unchanged.  Tr.

7   27 (citing Tr. 498).  Because an ALJ is not required to credit opinions that are

8   unsupported by objective evidence, this was a specific, legitimate reason to

9   discredit these opinions.

10      Plaintiff cites various records that he alleges show that the ALJ failed to

11  properly weigh Dr. Reinmuth's opinion, including physical therapy records and Dr.

12  Reinmuth's records relating to wrist, back, and right leg symptoms, ECF No. 14 at

13  16-17, but this is simply a suggestion that the Court re-weigh the medical evidence,

14  a task that is the ALJ's responsibility.  *See Thomas*, 278 F.3d at 958 (citing *Matney*

15  *v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) (it is the ALJ's responsibility to

16  determine the credibility of medical evidence)).

17      *2. Dr. Dougherty*

18      The ALJ gave significant weight to examining psychologist Dr. Dougherty's

19  August 2012 opinion.  Tr. 29 (citing Tr. 425-39).  Dr. Dougherty opined that

20  Plaintiff was able to follow a three-step command without difficulty and was able

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 30

1    to follow simple directions and tasks.  Tr. 25 (citing Tr. 431, 434).  Plaintiff

2    contends that the ALJ erred because she failed to account for Dr. Dougherty's

3    objective findings, ECF No. 14 at 18, including scores below the .5 percentile in all

4    areas of memory tested (citing Tr. 430), and his assessed GAF of 50, indicating

5    serious symptoms or impairment (citing Tr. 432).  Because Dr. Dougherty's

6    opinion was contradicted by Dr. Clifford's, the ALJ was required to provide

7    specific and legitimate reasons to the extent that she rejected Dr. Dougherty's

8    opinion.  *Bayliss*, 427 F.3d at 1216.

9         The ALJ did not reject Dr. Dougherty's opinion, as Plaintiff alleges.

10   Instead, the ALJ credited Dr. Dougherty's limitation to simple instructions because

11   it was consistent with mental status exam findings that support no more than mild

12   to moderate limitations.  Tr. 29.  An ALJ may properly give greater weight to

13   medical opinions that are consistent with the record as a whole.  *Orn v. Astrue*, 495

14   F.3d 625, 634 (9th Cir. 2007).  Here, Plaintiff's mental status exams were largely

15   normal, consistent with Dr. Dougherty's assessed ability to follow simple

16   instructions.  *See* Tr. 29 (citing Tr. 592-93 (in April 2013, Plaintiff is alert and fully

17   oriented, speech is normal); Tr. 676 (in May 2012, Plaintiff is fully oriented,

18   speech and memory are normal)).  The ALJ further cited seven other normal

19

20

mental status exam findings.[5]  This was a specific, legitimate reason to credit Dr.

Dougherty's assessed RFC and reject more dire findings.

### 3. Reviewing Sources

Plaintiff faults the ALJ for giving greater weight to the opinions of non-

examining reviewing physicians Thomas Clifford, Ph.D., and Denis Koukol, M.D.,

than to Plaintiff's treating providers Dr. Reinmuth and examining physician Dr.

Dougherty.  ECF No. 14 at 17-18.  Dr. Clifford reviewed the record in August

2012 (Tr. 92-93) and Dr. Koukol in October 2012 (Tr. 120-22, 133-35).  Tr. 29-30.

Plaintiff is correct that the opinion of a nonexamining medical advisor cannot by

itself constitute substantial evidence that justifies the rejection of the opinion of an

examining or treating physician.  ECF No. 14 at 18 (citing *Morgan v. Comm'r of*

*Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1995); *Pitzer v. Sullivan*, 908 F.2d

502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.

1984)).

Here, the ALJ relied on more than reviewing Dr. Koukol's opinion when she

rejected Dr. Reinmuth's opinion.  As noted, Dr. Reinmuth's opinion was not

supported by objective findings, and the objective findings, including examination

results, were mostly normal.  Because the ALJ relied on more than simply Dr.

---

[5] Tr. 29 (citing Tr. 586, 593, 599, 618, 630, 661, 668).

1    Koukol's opinion, Plaintiff's contention lacks merit.

2         With respect to Dr. Clifford's opinion, Plaintiff simply states that "[t]he ALJ

3    merely asserted without support that the opinions of reviewing physicians Dr.

4    Koukol and Dr. Clifford were supported by the record."  ECF No. 14 at 17-18.

5    Plaintiff vaguely contends that this is "legally insufficient reasoning to reject the

6    opinions" of his treating providers who believed he was disabled, but he does not

7    develop the argument any further, and fails to identify a treating provider who

8    opined that Plaintiff is disabled by psychological impairments.  ECF No. 14 at 18.

9    Accordingly, that argument is waived.  *See Carmickle v. Comm'r of Soc. Sec.*

10   *Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (declining to consider a matter that

11   was not "specifically and distinctly argued in an ... opening brief."); *Locastro v.*

12   *Colvin*, No. C14-5499TSZ, 2015 WL 917616, at *2 (W.D. Wash. Mar. 3, 2015)

13   ("The Court may deem arguments that are unsupported by explanation to be

14   waived.") (citations omitted*); Independent Towers of Washington*, 350 F.3d 925,

15   929 (9th Cir. 2003) ("Given that Plaintiff has failed to properly develop the

16   argument ... the Court considers [it] waived and will not consider this issue.").

17   **C.  New Evidence**

18        Plaintiff asks this Court to consider Melissa Belding, M.A.'s psychological

19   opinion and treating physician Dr. Reinmuth's opinion in determining whether

20   substantial evidence supports the ALJ's decision.  Plaintiff submitted these

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 33

1    opinions for the first time to the Appeals Council.  ECF No. 14 at 19.  In the Ninth

2    Circuit, a district court must consider new evidence submitted for the first time to

3    the Appeals Council when the Council considers that evidence in denying review

4    of the ALJ's decision.  *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157,

5    1162 (9th Cir. 2012).  The Ninth Circuit distinguishes between evidence submitted

6    and evidence considered:

> We are persuaded that the administrative record includes evidence submitted
> to *and* considered by the Appeals Council.  The Commissioner's regulations
> permit claimants to submit new and material evidence to the Appeals
> Council and require the Council to consider that evidence in determining
> whether to review the ALJ's decision, so long as the evidence relates to the
> period on or before the ALJ's decision.

*Brewes*, 682 F.3d at 1162 (citing 20 C.F.R. § 404.970(b)) (emphasis added).  The

regulations circumscribe what evidence the Appeals Council may consider.  20

C.F.R. § 404.970(b).  The Appeals Council need not consider evidence that does

not relate to the period on or before the ALJ's decision.  *Id.*

Here, even if the Appeals Council considered Ms. Belding's opinion, the

opinion is rendered in a check-the-box form with no supporting objective findings

or evidence.  Tr. 705-07.  An ALJ may "permissibly reject[ ] ... check-off reports

that [do] not contain any explanation of the bases of their conclusions."  *Molina,*

674 F.3d at 1111 (citing *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).   Nor

does Ms. Belding indicate that the limitations would last at least twelve

consecutive months, as required.  *See* 42 U.S.C. § 423(d) (2) (A) ("To establish a

claimant's eligibility for disability benefits under the Social Security Act, it must

be shown that: (a) the claimant suffers from a medically determinable physical or

mental impairment that can be expected to result in death or that has lasted or can

be expected to last for a continuous period of not less than twelve months;");

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  Therefore, Ms. Belding's

opinion does not change the Court's finding that the ALJ's decision is supported

by substantial evidence.

In addition, the new evidence submitted to the Appeals Council consisted of

a December 1, 2014, opinion by treating physician Dr. Reinmuth.  Tr. 710-12.  Dr.

Reinmuth opined, in part, that assessed limitations, including the likelihood that

Plaintiff would miss four or more days of work per month, Tr. 711, had been

present since April 2012, before the ALJ's decision.  Tr. 712.

However, this is not new and different evidence but rather another of Dr.

Reinmuth's opinions similar to those the ALJ properly rejected, for the reasons

noted by the Court herein.  Accordingly, the Court is confident that this opinion

also does not provide a basis for altering the ALJ's decision, because, in light of

the record as a whole, the ALJ's decision was supported by substantial evidence.

*See Brewes,* 682 F.3d at 1162-63 ("Following *Ramirez*, we have routinely

considered evidence submitted for the first time to the Appeals Council, to

determine whether, in light of the record as a whole, the ALJ's decision was

1    supported by substantial evidence.").

2        Plaintiff asks this Court to remand for benefits or further proceedings.  ECF

3    Nos. 14 at 20; 16 at 9-10.  The Social Security Act allows this Court to order the

4    Secretary to consider additional evidence, "but only upon a showing that there is

5    new evidence which is material and that there is good cause for the failure to

6    incorporate such evidence into the record in a prior proceeding."  42 U.S.C. §

7    405(g).  Plaintiff fails to assert, let alone explain, how the evidence satisfies this

8    requirement.  This Court will not "manufacture arguments" for him.  *Greenwood v.*

9    *Fed. Aviation Admin.*, 28 F. 3d 971, 977 (9th Cir. 1994).

10                                  **CONCLUSION**

11        After review, the Court finds that the ALJ's decision is supported by

12    substantial evidence and free of harmful legal error.

13        **IT IS ORDERED:**

14        1.  Defendant's motion for summary judgment (ECF No. 15) is **GRANTED**.

15        2. Plaintiff's motion for summary judgment (ECF No. 14) is **DENIED.**

16        The District Court Executive is directed to file this Order, enter

17    **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE**

18    the file.

19

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 36

DATED this 19th day of December, 2016.

_S/ Mary K. Dimke_
MARY K. DIMKE
U.S. MAGISTRATE JUDGE
